# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | | |
|---|---|---|
| RAMIRO E. HERNANDEZ,<br>    Plaintiff, | )<br>)<br>) | |
| v. | ) | CAUSE NO.: 2:17-CV-433-JEM |
| NANCY A. BERRYHILL,<br>Deputy Commissioner for Operations,<br>Social Security Administration,<br>    Defendant. | )<br>)<br>)<br>)<br>) | |

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Ramiro E. Hernandez, and Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [DE 20], filed May 18, 2018. Plaintiff requests that the decision of the Administrative Law Judge be reversed and remanded for further proceedings. On June 11, 2018, the Commissioner filed a response, and on July 16, 2018, Plaintiff filed a reply. For the following reasons, the Court grants Plaintiff's request for remand.

## I.     Background

On September 10, 2013, Plaintiff filed an application for benefits alleging disability beginning September 1, 2013. Plaintiff's application was denied initially and upon reconsideration. On November 16, 2016, Administrative Law Judge ("ALJ") Edward Kristof held a hearing at which Plaintiff, with counsel, and a vocational expert ("VE") testified. On December 28, 2016, the ALJ issued a decision finding that Plaintiff was not disabled.

The ALJ made the following findings under the required five-step analysis:

1.     The claimant has not engaged in substantial gainful activity since September 10, 2013, the application date.

1

2. The claimant has the following severe impairments: schizophrenia and an affective disorder.

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one the listed impairments in 20 CFR 404, Subpart P, Appendix 1.

4. The claimant has the residual functional capacity to perform a full range of work at all exertional levels but with several non-exertional limitations. Specifically, the claimant is able to understand, remember and carry out unskilled tasks. He is able to relate on at least a superficial and ongoing basis with co-workers and supervisors, but is to have no interaction with the public as part of his job duties. The claimant is able to attend to tasks for sufficient periods of time to complete such tasks and is able to manage the stresses involved with simple work. In addition, he is to avoid unprotected heights, moving machinery, and other workplace hazards. Last, he is never to operate a motor vehicle as part of job duties.

5. The claimant is capable of performing past relevant work as a machine packager. This work does not require the performance of work-related activities precluded by the claimant's residential functional capacity.

6. The claimant has not been under a disability, as defined in the Social Security Act, since September 10, 2013, the date the application was filed.

The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## II. Standard of Review

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by

substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his or her analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55

3

F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## III. Analysis

Plaintiff argues that the ALJ's assessment of Plaintiff's residential functional capacity ("RFC") was not supported by substantial evidence and that he made improper inferences about Plaintiff's failure to follow his treatment plan. The Commissioner argues that the ALJ's findings are supported by substantial evidence.

In assessing Plaintiff's RFC, the ALJ limited Plaintiff to unskilled, simple work: "Specifically, the claimant is able to understand, remember and carry out unskilled tasks. He is able to relate on at least a superficial and ongoing basis with co-workers and supervisors, but is to have no interaction with the public as part of his job duties. The claimant is able to attend to tasks for sufficient periods of time to complete such tasks and is able to manage the stresses involved with simple work." The ALJ found that Plaintiff was no more than moderately limited in social functioning, daily activities, and concentration, persistence, and pace.

The ALJ appeared to base his findings from the RFC in large part on an Adult Function Report completed by Plaintiff in 2013. In that report, Plaintiff, who has been diagnosed with

4

schizophrenia, indicated that he had no problems getting along with others or with personal care, that he cooked "complete meals," could complete chores in "average time," shop, and take care of personal finances. However, in a second Adult Function Report in 2014, Plaintiff stated that he struggled with personal hygiene, no longer shaved because it was "unsafe," ate compulsively or not at all, experienced hallucinations and paranoia, and had "withdraw[n] from society" because he thought he made others feel uncomfortable. The ALJ did not appear to consider that Plaintiff's description of his abilities in 2013 might not have been indicative of an ability to perform at that level consistently. *See Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011) ("[A] plaintiff who suffers from mental illness will have better days and worse days").

Moreover, Plaintiff's report in 2014 was supported by his testimony at the hearing, doctors' treatment notes (indicating limited judgment and insight, paranoia, and "constant" hallucinations), and a third-party report from his uncle indicating that Plaintiff neglected personal care, needed help with chores and shopping, suffered from hallucinations and delusions several times a week, and would leave for days at a time and come back "dirty" with "torn clothing." In separate examinations, Plaintiff received GAF scores of 45 and 53; while the ALJ explained why he found them to be of "limited value," in this context, they support the need for further explanation as to why Plaintiff needs only "moderate" limitations. *See, e.g.*, *O'Connor-Spinner v. Colvin*, 832 F.3d 690, 693 (7th Cir. 2016) (*O'Connor-Spinner II*) ("[Plaintiff]'s GAF score once again was recorded as 50, indicating serious symptoms or functional impairments."); *Campbell v. Astrue*, 627 F.3d 299, 306-07 (7th Cir. 2010) ("A GAF rating of 50 does not represent functioning within normal limits."). An ALJ "cannot rely only on the evidence that supports [his] opinion." *Yurt v. Colvin*, 758 F.3d 850, 859 (7th Cir. 2014) (quoting *Bates v. Colvin*, 736 F.3d 1093, 1099 (7th Cir. 2013)); *Denton v. Astrue*, 596

5

F.3d 419, 425 (7th Cir. 2010) ("An ALJ . . . cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding."). Although the ALJ mentioned some of these facts in his summary of the evidence, the ALJ did not explain why he adopted the limitations suggested by Plaintiff's 2013 report and not stronger limitations that would have been supported by the 2014 report and other evidence, leaving the Court without a "'logical bridge' between the evidence and his conclusions." *O'Connor-Spinner*, 627 F.3d at 618.

Plaintiff argues that the ALJ improperly inferred that his failure to follow treatment plans was evidence that he needed only moderate limitations. The ALJ found: "No further limitations are warranted because the claimant refuses to comply with the treatment plan and refuses to take his medications as prescribed. . . . Rather than accepting the medical judgment of his treating sources, the claimant has elected to direct his own care and refuses to take the medications prescribed. None of his medical sources have suggested that his non-compliance [is] a function of his mental impairments. Indeed, treating source Dr. [Prakash] Varghese reported that the claimant had fair insight and judgment [citations omitted]." Plaintiff argues that Dr. Varghese's statement at a psychiatric evaluation regarding "fair" insight and judgment, in the context of schizophrenia, essentially refers to the patient's awareness of his or her mental illness. The ALJ's negative inference based on Dr. Varghese's statement, with no evidence that it was related to Plaintiff's ability to follow a treatment plan, leaves the Court concerned that he substituted his own judgment for that of a medical professional. *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) "[A]dministrative law judges of the Social Security Administration[] must be careful not to succumb to the temptation to play doctor. . . . Common sense can mislead; lay intuitions about medical phenomena are often wrong."); *see also e.g., Myles v. Astrue*, 582 F.3d 672, 677-78 (7th Cir. 2009)

6

(warning that an ALJ may not "play[] doctor and reach[] his own independent medical conclusion"); *Blakes v. Barnhart*, 331 F.3d 565, 570 (7th Cir. 2003); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996).

More generally, the ALJ did not properly develop the record as to why Plaintiff did not comply with treatment plans, and did not adequately analyze the information that was there. When failure to comply with medical treatment recommendations is used as a factor in determining whether a claimant's statements regarding his symptoms are to be believed, an ALJ is required make a determination about whether the lack of treatment is justified and develop the record accordingly. *See* Social Security Ruling 16-3p, 2016 WL 1119029 (Mar. 16, 2016), at *8; *Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012) ("Although a history of sporadic treatment or the failure to follow a treatment plan can undermine a claimant's credibility, an ALJ must first explore the claimant's reasons for the lack of medical care before drawing a negative inference."); *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008) ("[T]he ALJ 'must not draw any inferences' about a claimant's condition from this failure unless the ALJ has explored the claimant's explanations as to the lack of medical care.") (quoting SSR 96-7p, 1996 WL 374186 (July 2, 1996)). This is particularly so when mental illness is implicated. *See, e.g.*, *Kangail v. Barnhart*, 454 F.3d 627, 630 (7th Cir. 2006) (mental illness may prevent the patient from "submitting to treatment").

The ALJ stated that none of Plaintiff's medical sources explicitly found that he was non-compliant due to his mental illness, and that no medical source ordered a more aggressive treatment plan such as hospitalization. No medical source opined clearly on the precise reasons for Plaintiff's non-compliance with treatment. However, Plaintiff's treatment notes from Regional Mental Health Center indicate that as of August 2013, he did not take his prescribed Seroquel, "admitted that this

7

is due to paranoia," and at that time he agreed to join the waitlist to see a psychiatrist. In May 2015, he told Dr. Varghese that he was taking prescribed medication but had "been out of it for 2 days. I think it's normal though, but I hear voices frequently and I need to be back to taking medications." On multiple occasions, he told Dr. Varghese that he had difficulty remembering to take medication. In February 2016, after he reported that he had been "out of . . . medications" for 60-90 days, he asked for a lower dose of Seroquel, and told Dr. Varghese: "I tried medications. I am not ready to let the medications go. . . . I noticed the drowsiness, but no other benefits. I want to give it some time to see if it works." At the hearing, Plaintiff testified that he was no longer willing to go to Regional Mental Health Center, the only provider in his area offering services to uninsured patients, in part because a "horrible terrorist event" had occurred at a related facility "in the other side of the country," and it was therefore a "bad brand." Given this evidence, combined with the ample evidence in the record of Plaintiff's schizophrenia and paranoia, the ALJ should have "explored" the issue of Plaintiff's non-compliance, *Craft*, 539 F.3d at 679, rather than making a punitive inference apparently based on an absence of medical opinion on the topic.

On remand, the ALJ is instructed to draw a logical bridge from the evidence as it actually appears in the record to his or her conclusions about Plaintiff's RFC, and must thoroughly address the evidence in the record, including that which does not support his or her conclusions. To the extent the ALJ draws any inferences about Plaintiff's non-compliance with treatment, he or she must analyze the evidence in the record as to the reasons for the non-compliance and solicit additional information as needed. *See, e.g., Barnett*, 381 F.3d at 669 ("An ALJ has a duty to solicit additional information to flesh out an opinion for which the medical support is not readily discernable.") (citing 20 C.F.R. § 404.1527(c)(3); SSR 96-2p, 1996 WL 374188 at *4 (July 2, 1996)); 20 C.F.R. §§

404.1512(d)(1), 416.919(b)).

The ALJ is also reminded to fully incorporate any difficulties in concentration, persistence and pace into the RFC and in any hypotheticals to the VE. In particular, the ALJ is reminded that a limitation to unskilled work and limited interaction does not, by itself, account for a claimant's difficulties in focus and concentration, or his ability to perform those tasks consistently in a work environment. *See Stewart v. Astrue*, 561 F.3d 679, 684-85 (7th Cir. 2009) (rejecting the contention "that the ALJ accounted for [the plaintiff]'s limitations of concentration, persistence, and pace by restricting the inquiry to simple, routine tasks that do not require constant interactions with coworkers or the general public"); *Craft v. Astrue*, 539 F.3d 668, 677-78 (7th Cir. 2008) (limitation to unskilled work did not account for limitations in concentration, pace, and mood swings).

## IV. Conclusion

For the foregoing reasons, the Court hereby **GRANTS** the relief requested in Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [DE 20], **DIRECTS** the Clerk of Court to enter judgment in favor of Plaintiff, and **REMANDS** this matter for further proceedings consistent with this opinion.

SO ORDERED this 6th day of February, 2019.

s/ John E. Martin
MAGISTRATE JUDGE JOHN E. MARTIN
UNITED STATES DISTRICT COURT

cc: All counsel of record